UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOSEPH PEREZ,                                      CIVIL NO. 10-424 (MJD/JSM)

      Petitioner,

v.                                                REPORT AND RECOMMENDATION

JESSICA SYMMES, Warden

      Respondent.

      Joseph Perez, Minnesota Correctional Facility-Oak Park Heights, 5329 Osgood Avenue North, Stillwater, Minnesota, 55082-1117, Petitioner, pro se.

      Mark Nathan Lystig, Assistant Ramsey County Attorney, 50 West Kellogg Boulevard, Suite 315, St. Paul, Minnesota, 55102 for Respondent.

JANIE S. MAYERON, United States Magistrate Judge

      This matter is before the undersigned Magistrate Judge of the District Court on the Petition of Joseph Perez for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Docket No. 1].  Respondent has filed an Answer, contending that the Petition should be dismissed.  [Docket No. 11].[1]  The case has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that Perez's habeas corpus petition be DENIED, and this action be DISMISSED WITH PREJUDICE.

_____

[1]     Perez was permitted to file a reply to Respondent's answer, but he did not do so. See Order dated February 18, 2010 [Docket No. 10].

## I.    FACTUAL BACKGROUND

The Minnesota Court of Appeals described the factual background of Perez's case as follows:[2]

> Shortly before 11:30 p.m. on June 5, 2005, St. Paul police officer Armando Abla-Reyes was at his home when he and his girlfriend heard someone in the kitchen. She saw a man in the backyard. Abla-Reyes saw another man leaving his house. He did not see the intruder from the front and could not describe him. Abla-Reyes ran outside. In the alley, he noticed a man holding something that could have been his girlfriend's purse and gave chase. The suspect ran and ducked out of sight.
>
> After a few moments, Abla-Reyes saw a man with the same build, clothing, and cap as the intruder. The man was holding an item that appeared to be a purse. When Abla-Reyes identified himself as a police officer and attempted to detain him, a fight ensured. The suspect knocked him down and choked him. As Abla-Reyes pushed back and momentarily freed himself, he was hit twice on the head and briefly lost consciousness. Because of the force with which he was hit and because the man with whom he was struggling had fallen back, Abla-Reyes concluded a second person was responsible for the blows to his head.
>
> In the course of a police investigation of the incident, Abla-Reyes viewed photo lineups of potential suspects. He identified one Aaron Syring as the person he saw in the alley, chased, and fought. He also identified a photo of appellant Joseph Perez as someone who looked "familiar" to him but said he was not the person with whom he struggled.[3] Police interviewed appellant's father. The father told the investigator that, when appellant came to the father's home on the night of the assault, appellant was frantic and agitated, stated that he had been in a fight with someone,

---

[2]    "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

[3]    One officer reported that Abla-Reyes told him that appellant [Perez] was familiar to him in relation to the specific case.

used force to get away, feared he had killed the person, and was leaving town.  The father testified that, when told that news reports indicated that the victim was a police officer, appellant was "in shock," "scared to death," and, in a matter of days, left for Texas with his girlfriend.

Appellant was eventually apprehended and charged with first degree burglary, first-degree assault on a police officer, and third-degree assault, both as a principal assailant and as an accomplice.

At trial, appellant testified that he fought with Abla-Reyes and that the cap found by police was his.  But he denied being involved in a burglary and claimed he was innocently proceeding down the alley when Abla-Reyes accosted him.  He denied hearing anything that night about Abla-Reyes being a police officer.  Also, he denied choking Abla-Reyes and hitting him with a metal object.  Appellant explained that the reason Abla-Reyes thought he was struck by a metal object was because his head hit a fence after appellant kneed him in the face.  Appellant admitted that he and Aaron Syring were close friends, but denied that he was with Syring that night.

State v. Perez, 2009 WL 1918634 (unpublished opinion) at *1 (Minn. Ct. App. 2009),

rev. denied, Sept. 29, 2009.

Perez's memorandum in support of his motion for reconsideration of the district court's order denying post-conviction relief and his appellate brief describe Perez's side of the story regarding the events of that night.  See Respondent's Appendix ("Resp. Appx."), pp. A-1-34 (Perez's appellate brief); pp. A-46-48 (memorandum in support of reconsideration) [Docket No. 11].

According to Perez, he had been at Schweitz's bar shortly before someone entered Abla-Reyes's home and a black male was observed in the backyard.  Id., p. A-46.  Perez was approached by a police officer outside the bar and the officer asked Perez for his identification.  Id., p. A-47.  The officer took Perez's wallet and left to check on Perez's status regarding warrants.  Id.  While the officer was gone, Perez ran away

3

because he had an outstanding bench warrant.  Resp. Appx., pp. A-14, A-47.  Perez

was given a ride to the residence of Sherry Ann Green by two black men in a white van.

Id.  Perez told the men that he would pay them for the ride, but he actually did not have

any money.  Id., p. A-15.  Perez did not want to tell the men where he lived so he

directed them to his friend Sherry Green's house, which was four or five blocks from his

father's house.  Id.  When Perez ran around the side of the house, the men in the van

remained in the front, and Green called the police.  Resp. Appx., p. A-47.

Green testified at Perez's trial that on the night of June 5, 2005, she responded

to a knock on her door, but no one was there.  Id. p. A-18.  She saw a van with some

black men in it.  When she asked what was going on, the men said that a "bright

skinned man" had run around the house.  Id.  She eventually called the police.  Id.

Perez did not think Green was home, because her car was not out.  Id.  Perez saw a

light on in Green's son's room and whispered to him to be quiet.  Id. at A-16.  Perez

heard a commotion and what sounded like a hostile argument.  Id.  He ran towards his

father's house.  Id.  While running through yards and an alley, someone yelled and told

him to stop.  He got into a fight with a man, kneed him in the face and saw blood coming

from the man's nose.  Id.  Perez ran to his father's house and told him that he gotten

into fight with someone but he did not know why.  Resp. Appx., p. A-16.

Perez's girlfriend Jamie Reichert testified at his trial that Perez, who is heavily

tattooed all over his body, including up and down his arms, was wearing a sleeveless

black jersey and shorts the evening of the incident.  Id. at A-14.  On Monday, June 6,

2005, Perez called Reichert and asked her to pick him up at his father's home, which

she did.  Id.  Perez stayed at Reichert's home for a few days and then Reichert drove

him to Texas.  Id.  Perez told Reichert that he had to get away because he had been in a fight.  Resp. Appx., p. A-14.  Reichert was eventually arrested and told that she would be prosecuted for aiding an offender.  Id.  In exchange for her testimony in both Perez's trial and Syring's, the state agreed not to prosecute her.  Id.

Perez testified at trial that Aaron Syring was "absolutely not" present that evening.  Id.  Perez further testified that he was never in Abla-Reyes' girlfriend's house, that he was not with anyone else who went into the house, and he knew nothing about a burglary.  Resp. Appx., p. A-16.  Perez believed that his heavily tattooed arms excluded him as the individual Abla-Reyes chased from Abla-Reyes's girlfriend's home, because "even the prosecutor argued that of course Abla-Reyes would have noticed the tattoos if it was [Perez] whom he had chased and locked arms with."  Id., pp. A-26-27.  In essence, Perez's version of the events of that night was that he was in the wrong place at the wrong time, the fight with Abla-Reyes was not of his making, and he had nothing to do with a burglary.

A jury found Perez guilty of aiding and abetting and being aided and abetted by others in committing burglary in the first degree and aiding and abetting and being aided and abetted by others in committing first degree assault on a peace officer.  Perez, 2009 WL 1918634 at *2.  Perez was sentenced to 57 months and a concurrent sentence of 165 months for his conviction on the assault charge.  Resp. Appx. p. A-6. Aaron Syring, who was identified by Abla-Reyes as the individual he saw in the alley, chased and fought, was tried after Perez on the same charges and was acquitted.  Id.

A State Public Defender filed a Notice of Appeal on Perez's behalf on February 20, 2007, but later moved to stay the appeal and for remand of the case for post-conviction proceedings. Id.

Perez raised two issues in his petition for post-conviction relief: 1) the prosecutor committed misconduct by arguing "inconsistent theories in two separate trials upon the same set of facts" (referring to his trial and to Syring's trial); and 2) his trial counsel's failure to call defense witnesses who could have corroborated Perez's testimony constituted ineffective assistance of counsel. See Petitioner's Memorandum in Support of Petition for Writ of Habeas Corpus ("Pet. Mem."), Ex., pp. A-23-26 [Docket No. 1-3] (Order and Memorandum denying post-conviction relief). The district court denied Perez's motion for post-conviction relief, concluding that:

> This court cannot find the prosecutor argued inconsistent theories or facts in the two trials. The facts and theories that he cites do not constitute inconsistencies such that would rise to the level of a due process violation. Instead, the court agrees with the State's position that any such "inconsistencies" in the prosecutor's presentation are the result of a fair difference of emphasis of facts that one would normally expect an attorney to do in different trials involving co-defendants. As such, there is no due process violation.

Id., pp. A-25-26.

Regarding Perez's ineffective assistance of counsel claim, the court noted that Perez "made no showing as to how these unnamed witnesses would have testified, and how the claimed error in not calling them would have changed the result in his case." Id., p. A-26. On that basis, the court concluded that "inasmuch as the petitioner has failed to allege sufficient facts to show he would be entitled to relief even if he proved

those facts by a preponderance of the evidence, the petitioner is entitled to no relief, and no evidentiary hearing is necessary." Id.

Perez moved for reconsideration of the state court's denial of post-conviction relief on July 14, 2008. See Resp. Appx., p. A-7. Before the state court could decide that motion, Perez moved to vacate the stay of his direct appeal, thereby depriving the state court of jurisdiction to consider the motion. Id.

Perez presented the following issues to Minnesota Court of Appeals on his direct appeal: 1) the State's inconsistent theories of perpetrators and events in the trials of Perez and Syring violated Perez's right to due process and fundamental fairness; 2) the evidence was insufficient as a matter of law to sustain Perez's conviction; 3) Perez was denied his right to effective assistance of counsel because his trial counsel failed to conduct a complete investigation; and 4) the district court improperly denied Perez's motion for post-conviction relief without an evidentiary hearing. Resp. Appx., p. A-2.

The state appellate court rejected Perez's arguments and affirmed his conviction. Perez, 2009 WL 1918634 at *5. As to Perez's claim that his right to due process was violated by the presentation of different theories in the two trials, the court noted that the doctrine of "judicial estoppel" on which Perez relied to support this argument had not been adopted in Minnesota[4] and, at any rate, on reviewing the trial court record, the court did not find a clear inconsistency in the state's position. Id. at *2. Perez had

_____

[4]     The doctrine of "judicial estoppel" has three elements: "(1) the party presenting the allegedly inconsistent theories must have prevailed in its original position; (2) there must be a clear inconsistency between the original and subsequent position of the party; and (3) there must not be any distinct or different issues of fact in the proceedings. In [State v. Pendleton, 706 N.W.2d 500, 507 (Minn. 2005)] the doctrine had no application to the facts and the court did not decide whether to recognize it." Perez, 2009 WL 1918634 at *2.

focused on what he considered to be the State's differing claims regarding who was in Abla-Reye's girlfriend's house.  Id.  "In reviewing the record, . . . in Syring's trial, the prosecution only presented evidence that Syring was the person Abla-Reyes saw and chased in the alley and did not claim that Syring was in the house."  Id.  Perez claimed that in his case there was evidence presented that Syring was the person Abla-Reyes saw in his house.  Id.  Perez supported his claim of inconsistency by pointing out to the cross-examination of Abla-Reyes who responded "yes" when asked whether Syring was the person who was pursued "from [his] house" and with whom he had a conflict.  Id.  Additionally, one investigating officer testified that Abla-Reyes told him that it was Syring who was in the house and two other officers "implied" that the person Abla-Reyes chased was the same person who was in the house.  Id. at *2-3.

In rejecting Perez's argument that the prosecution presented inconsistent theories and evidence at the trial of Perez and Syring, the court explained:

> A close examination of the record does not support the assertion that the prosecution in appellant's trial attempted to establish who was in the house.  Abla-Reyes testified that he did not recognize the person in the house because he did not see his face.  Although Abla-Reyes indicated that he chased Syring "from" the house and fought him, Abla-Reyes may have meant that, when he chased Syring down the alley, he was chasing him away from the vicinity of his house.  The record does not support appellant's claim that, in his trial, the prosecution attempted to establish who was in the house.  Consequently, appellant does not show that respondent presented clearly inconsistent positions in the separate trials.  Regardless, appellant does not explain how the possibly differing evidence of the roles played by Syring are fundamentally prejudicial to appellant.  To be sure, Syring was acquitted.  However, he had a separate alibi witness in his trial.  Conviction of appellant for aiding and abetting first-degree burglary did not require that the prosecution prove who was in the house committing the

> burglary or base a conviction solely on the theory that Syring
> was the burglar.

Id. (emphasis in original).

The Court of Appeals next determined that there was sufficient evidence to support Perez's conviction, pointing to the following: 1) someone entered the home without permission while Abla-Reyes and his girlfriend were there; 2) another person was in the backyard at the time; 3) a purse had been stolen from a house nearby shortly before someone entered the home; 4) Abla-Reyes ran out, saw someone he believed was Syring with a purse and saw that person flee; 5) Abla-Reyes chased and fought with that person; 6) someone hit Abla-Reyes in the head twice; 7) the stolen purse and Perez's hat were left at the scene, both stained with Abla-Reyes's blood; 8) Perez admitted fighting Abla-Reyes and feared he had killed him; 9) Abla-Reyes identified Perez as someone familiar from the night of the incident; 10) Perez and Syring were good friends and often spent time together.  Id. at *3.  On this evidence, the court concluded that a reasonable jury could have found beyond a reasonable doubt that Perez was aiding and abetting the burglary either acting as a lookout or as an accomplice to Syring or someone else who was robbing houses in the neighborhood. Id.

The appellate court then considered Perez's ineffective assistance of counsel claim.[5]  Perez claimed that his trial counsel failed to conduct a complete investigation,

---

[5]    Because Perez filed his Notice of Appeal while his motion for reconsideration was pending, the district court never considered the additional claims he raised concerning additional potential testimony he argued would support his ineffective assistance of counsel argument.  Perez, 2009 WL 1918634 at *4.  The Court of Appeals

which could have further corroborated his testimony that he was not involved in the burglary. Id. The court concluded that in light of Perez's admission that he fought with Abla-Reyes and injured him, "appellant's attempt to contest being in the area at the time of the burglary appears to be a very marginal defense strategy." Id. The court reviewed the affidavit of Deborah Ellis, Perez's post-conviction and appellate counsel, which was submitted in connection with Perez's motion for reconsideration of the court's denial of the petition for post-conviction relief. Ellis submitted the affidavit in response to the trial court's criticism that Perez had failed to identify the witnesses who should have been called at trial and their purported testimony in his original motion for post-conviction relief.

These witnesses included a St. Paul Police officer who could have corroborated Perez's story about fleeing form officers after he was stopped at Schweitz's bar and a records custodian who could have corroborated Green's testimony that she called the police after the knock on her door and seeing the men in the van in front of her house. Resp. Appx. pp. A-42-43 (Affidavit of Deborah Ellis, Esq.) ("Ellis Aff."), ¶4. Ellis also attached a record from the St. Paul Police Department to her affidavit, showing that a police call was made to Green's address at about 11:30 p.m. on June 5, 2005. Id., ¶5 and attached exhibit marked "A-10-11."

The trial court never considered the motion for reconsideration or the Ellis affidavit because Perez filed a Notice of Appeal, terminating the district court's jurisdiction. At any rate, the Court of Appeals stated that "[u]nder the facts alleged in

---

considered this issue fully resolvable on the record before it and therefore, addressed the merits of Perez's arguments regarding ineffective assistance of counsel. Id.

the postconviction petition and even the motion for reconsideration, we conclude that the decision of appellant's attorney to not seek out or call additional alibi witnesses did not fall below an objective standard of reasonableness.  <u>Perez</u>, 2009 WL 1918634 at *5. The court determined that the affidavit "did not provide an adequate basis to require a hearing on ineffective assistance of counsel."  <u>Id.</u>  In light of that determination, the court decided that the trial court did not abuse its discretion in deciding that a hearing on Perez's ineffective assistance of counsel claim would be fruitless.  <u>Id.</u>

Perez petitioned the Minnesota Supreme Court for further review.  <u>See</u> Resp. Appx., pp. A-93-102 (Petition for Further Review).  Perez sought review of two issues: 1) "whether a prosecutor may argue different versions of the same facts in separate trials of co-defendants, without violating the defendant's due process rights;" and 2) whether "a petition and affidavit adequately provide a basis for a post-conviction evidentiary hearing."  <u>Id.</u> p. A-96.  Perez argued that his due process rights had been violated by the inconsistent prosecutorial theories presented in his trial and Syring's trial and urged the court to either reverse his conviction or grant him a new trial.  <u>Id.</u>, p. A-100.  Perez also protested that the Court of Appeals minimized the impact that corroborating evidence may have had at his trial and should not have concluded that the petition for post-conviction relief and Ellis's affidavit were not sufficient to trigger an evidentiary hearing.  <u>Id.</u>

The Minnesota Supreme Court summarily denied Perez's application for further review on September 29, 2009.  <u>See</u> <u>id.</u>, p. A-123 (Order).

On February 16, 2010, Perez filed a federal habeas corpus petition, raising four grounds for relief.  Petition [Docket No. 1].  The claims and facts Perez cites in support of these grounds are as follows:

(1)     Perez was denied his constitutional right to due process under the Fourteenth Amendment and fundamental fairness through the State's advancement of inconsistent theories of perpetrators and events in his trial and Syring's trial, and by doing so, compromised the integrity of the judicial process.  Id., p. 5.  According to Perez:

> [I]n the Petitioner's trial, the state argued that Petitioner aided and abetted his long time friend Aaron Syring who had entered Alba[sic]-Reyes[6] residence and that Petitioner was chased by Alba-Reyes and the two fought.  In total contradiction to that position, in Syring's trial the prosecutor argued that Syring was not in Alba-Reyes' residence, that Syring somehow aided in the burglary by being a look out in some accessory fashion, and that Syring locked arms and fought with Alba-Reyes in the alley.  Clearly, the prosecutor argued that it was Syring that Alba-Reyes had pursued from his residence. [citing trial transcript p.318].
> ***
> [T]he facts in each trial were the same, particularly given that Alba-Reyes and Petitioner testified in both trials.

See Petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet. Mem."), p. 17 [Docket No. 5].

(2)     Perez was denied due process under the Fourteenth Amendment because the evidence was insufficient as a matter of law to sustain Perez's burglary conviction.  Petition, p. 5.  According to Perez:

---

[6]     Perez refers to Abla-Reyes as "Alba-Reyes" throughout his Petition and Memorandum.  This Court will not note and correct each instance of Perez's misspelling of Abla-Reyes's name.

> The state presented evidence that (1) someone entered Alba-Reyes' home without permission while Alba-Reyes and his girlfriend were there; (2) another person was in Alba-Reyes' backyard at this time; (3) there had been a purse stolen from a nearby house shortly before the entry into Alba-Reyes' house; (4) Alba-Reyes ran outside, saw a person he believed to be Syring with a purse in his hand, and saw that person flee; (5) Alba-Reyes chased that person and fought with him; (6) someone hit Alba-Reyes in the head twice; (7) the stolen purse and Petitioner's hat were left at the scene, both stained with Alba-Reyes' blood; (8) Petitioner admitted fighting with Alba-Reyes at the time in question and feared that he killed him; (9) Alba-Reyes identified Petitioner as someone who looked familiar; and (10) Petitioner and Syring were good friends.
>
> ***
>
> Petitioner has demonstrated facts and circumstances in plain view that are accessible to this reviewing court, that no evidence exist[s] that would support an aiding and abetting conviction for burglary.  The level of activity on [the] part of the Petitioner, requires something more to impose liability pursuant to Minn. Stat. § 609.05, subd. 1.

Pet. Mem., pp. 22-24.

(3)    Perez was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to investigate and call defense witnesses who were needed for his case.  Petition, p. 6.  Perez argued:

> There were evidentiary devices available to trial counsel that were never utilized.  Legal investigators could have been employed in an attempt to take depositions.  Testimony from the St. Paul Police Dept. corroborated both Sherry Green's testimony regarding her call to the police and also Petitioner's testimony.  The corroboration of Petitioner's testimony by police records was highly germane, given that the prosecutor repeatedly asserted that Petitioner's testimony was not believable a "fabrication" even.  Any corroboration of Petitioner's testimony would have been beneficial to a man who had three felony convictions . . . and need to take the stand to tell what happened on the evening of June 5, 2005, and set the record straight that he was not with Aaron Syring that night.

> Testimony from a St. Paul police officer that Petitioner was
> stopped by police after turning over his wallet, cell phone
> and palm pilot . . . would have corroborated both Petitioner's
> and Marcus Green's trial testimony that Petitioner appeared
> at Ms. Green's residence around the same time an intruder
> was in Alba-Reyes' home.

Pet. Mem., p. 26-27 (internal citations omitted) (footnote omitted).

(4)     Perez was denied due process under the Fourteenth Amendment because he was entitled to a post-conviction hearing on his ineffective assistance of trial counsel claim.  Petition, p. 6.  Perez maintained:

> [T]he proper forum for presentation of an unresolved claim of
> ineffective assistance of counsel is on postconviction review.
>
> ***
>
> However, Petitioner was unsuccessful in developing the
> factual basis of his ineffective assistance of counsel claim in
> the state court proceeding because he was procedurally
> barred,[7] which was not his own decision or omission.

Pet. Mem., pp. 34-35.

Respondent contended that Perez's habeas petition should be denied in its entirety for the following reasons:

(1)     Perez's claim that he was entitled to relief because inconsistent theories were advanced in the two trials failed because there was no evidence that the state advanced "clearly inconsistent" theories or evidence in the two trials.  Answer to Petition for Habeas Corpus Relief by State Prisoner ("Resp. Answer") [Docket No. 11], p. 9.

---

[7]     The Court assumes by this statement that Perez is referring to the fact that the district court lost jurisdiction over his motion for reconsideration when he moved to vacate the stay of his appeal.

(2)     Perez procedurally defaulted as to his second claim for relief (insufficient evidence of guilt) and that claim was barred.  Id., pp. 5-6.  Further, the Court of Appeals' conclusion that a reasonable jury could have determined beyond a reasonable doubt that Perez was guilty of aiding and abetting burglary was not contrary to clearly established federal law and, on that basis, Perez's claim should be denied.  Id., pp. 9-10.

(3)     Perez failed to bring forth sufficient evidence to show that his trial counsel's representation fell below an objective standard of reasonableness and that he was prejudiced by the deficient performance.  Id., p. 10.

(4)     Perez failed to present any federal aspect to his claim that he was denied due process through the district court's failure to grant an evidentiary hearing on his petition for post-conviction relief.  Therefore, that claim was procedurally barred.  Id., pp. 4-5.  Alternatively, Perez's motion for post-conviction relief failed to make the appropriate offer that what he would prove would establish a right to relief.  Id., p. 11.  If such offer is not made, the post-conviction court is not required to hold an evidentiary hearing.  Id. (citing Erickson v. State, 725 N.W.2d 532, 537 (Minn. 2007)).

For the reasons set forth below, this Court finds that Perez is not entitled to the relief he seeks through his habeas petition and the petition should be dismissed.

## II.     RELEVANT LAW BEARING ON HABEAS PETITIONS

### A.     Habeas Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a federal court's review of habeas corpus petitions filed by state prisoners.  Section 2254 of the AEDPA provides that a district court will entertain a petition for writ of habeas corpus submitted by a person in custody pursuant to a state court judgment "only on the

ground that he is in custody in violation of the Constitution or laws or treaties of the

United States."  28 U.S.C. § 2254(a).  In addition, 28 U.S.C. § 2254 provides that a

habeas corpus petition:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Eighth Circuit has described the review under § 2254(d)(1) as follows:

> A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result. Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S.Ct. 1495.
>
> A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411, 120 S.Ct. 1495.

Engesser v. Dooley, 457 F.3d 731, 735-36 (8th Cir. 2006) cert. denied, 549 U.S. 1223

(2007).  Under this standard, the federal court "must deny a writ – even if we disagree

with the state court's decision – so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) (citing Williams, 529 U.S. at 409-13).

By its terms, it is important to remember that § 2254(d)(1) "limits the benchmark precedent against which a habeas court may measure a state court decision to 'clearly established Federal law, as determined by the Supreme Court of the United States.'" O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir. 1999), overruled on other grounds. Even if lower federal court decisions support a habeas petitioner's position, "the writ cannot issue unless the state court decision contravenes, or involves an unreasonable application of, extant Supreme Court jurisprudence." Id. Nevertheless, "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 872 (8th Cir. 1999) (citing O'Brien, 145 F.3d at 25) ("If no Supreme Court precedent is dispositive of a petitioner's claim, then, a fortiori, there is no specific rule to which the state court's decision can be 'contrary.'  In such circumstances, a federal habeas court then determines whether the state court decision reflects an unreasonable application of clearly established Supreme Court jurisprudence.  This reduces to a question of whether the state court's derivation of a case-specific rule from the Court's generally relevant jurisprudence appears objectively reasonable. To the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness vel non of the state court's treatment of the contested issue.").

B.    **Exhaustion and Procedural Default**

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  See also U.S. v. Armstrong, 554 F.3d 1159, 1166 (8th Cir. 2009), cert. denied, 129 S.Ct. 2805 ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.") (quoting Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (citations omitted)).

Therefore, before a federal district court can review a federal constitutional claim of a state prisoner in a § 2254 habeas corpus proceeding, "the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999).  A federal constitutional claim is reviewable in a § 2254 habeas corpus proceeding only if that claim was first fairly presented to, and decided on the merits by, the highest available state court.  The United States Supreme Court has explained this requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoner's federal rights. To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotations and citations omitted).

See also O'Sullivan, 526 U.S. at 845 ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits."  Gentry v. Lansdown, 175 F.3d 1082, 1083 (8th Cir. 1999) (citation omitted).

A federal claim is deemed to be unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner has the right, under state law, to raise the claim by any available procedure.  See 28 U.S.C. § 2254(c).[8]  These requirements are based on the principles of comity and federalism; their purpose is to ensure that state

---

[8]    28 U.S.C. § 2254(c) states: "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

courts are given the first opportunity to correct alleged federal constitutional errors raised by state prisoners. See O'Sullivan, 526 U.S. at 844 (citing Rose v. Lundy, 455 U.S. 509, 515-516 (1982); Darr v. Burford, 339 U.S. 200, 204 (1950)).

While a state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, nevertheless, if a claim is based on the federal constitution, the prisoner must "fairly present the facts and substance of his habeas claim to the state court." Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006) (citation omitted); see also McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("Mere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.'") (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam)).  Thus, "[t]o be fairly presented a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.  Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005), cert. denied, 546 U.S. 844 (2005) (internal quotation marks and citations omitted); see also Adams v. Robertson, 520 U.S. 83, 89 n. 3 (1997) ("passing invocations of 'due process' . . . [that] fail to cite the Federal Constitution or any cases relying on the Fourteenth Amendment . . . [do] not meet our minimal requirement that it must be clear that a federal claim was presented") (emphasis in original) (citation omitted).

"Ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32.  Consequently, even if the opinion of the state court of appeals does not make any mention of a federal claim, a brief submitted to that court that sets forth the federal constitutional basis for a claim can satisfy the requirement that the petitioner "apprise the state court of his claim that the … ruling of which he complained was not only a violation of state law, but denied him [rights] guaranteed by the [federal constitution]." Dye v. Hofbauer, 546 U.S. 1, 4 (2005) (quoting Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam)).

Generally, "[w]hen a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in Rhines v. Weber, [544] U.S. [269], 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005)." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir. 2005), cert. denied, 546 U.S. 1179 (2006).  However, when a prisoner has not exhausted his state court remedies for some particular claim, and state procedural rules preclude any further attempts to satisfy the exhaustion requirement as to that claim, then the claim is not truly "unexhausted," but rather, it has been "procedurally defaulted." Coleman v. Thompson, 501 U.S. 722, 750 (1991); McCall, 114 F.3d at 757. In other words, if there is still a state court remedy available, a previously unraised habeas claim is "unexhausted," but if there is no state court remedy still available, then the claim is "procedurally defaulted." See Armstrong, 418 F.3d at 926 ("if no state court

remedy is available for the unexhausted claim – that is, if resort to the state courts would be futile – then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim...'") (quoting Gray v. Netherland, 518 U.S. 152, 162 (1996).  See also Middleton, 455 F.3d at 855 ("'If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now.'") (quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc), cert. denied, 517 U.S. 1215 (1996).

In sum, a constitutional claim is procedurally defaulted if the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim.  Coleman, 501 U.S. at 750 (1991); McCall, 114 F.3d at 757.

A claim that has been procedurally defaulted cannot be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim.  Coleman, 501 U.S. at 750.

> "[C]ause" under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him: [w]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.  For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or that some interference by officials

> . . . made compliance impracticable, would constitute cause
> under this standard.

Coleman, 501 U.S. at 753 (internal quotations and citations omitted), (ellipses in original) (emphasis in original).

"Prejudice" that will overcome a procedural default requires a showing by a petitioner "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Armstrong v. Kemna, 590 F.3d 592, 606 (8th Cir. 2010), cert. denied, 130 S.Ct. 3369 (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original). A court need not determine the "cause" issue, if it first determines that the petitioner has not made a showing of prejudice. Id. at n.12.

The "fundamental miscarriage of justice" exception requires a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995) cert. denied, 516 U.S. 1161 (1996) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) (emphasis added)). For the miscarriage of justice exception to excuse a procedural default, it is not enough for a petitioner to point out errors at trial; instead, he must offer some new evidence which demonstrates that he is innocent of the crime for which he was convicted.[9]

---

[9]    In Pitts v. Norris, the Eighth Circuit explained what is meant by the actual innocence standard:

> The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir.

If a petitioner is unable to show cause and prejudice, or a miscarriage of justice, the procedural default cannot be excused, and the court will deny the claim without addressing its merits.   See Carney v. Fabian, 441 F.Supp.2d 1014, 1029 (D. Minn. 2006).

The Court now applies these principles to Perez's claims.

## III.   ANALYSIS

### A.   Perez has Procedurally Defaulted on Grounds Two and Four

In Ground Two of his habeas petition, Perez contended that he was denied his right to due process under the Fourteenth Amendment of the U.S. Constitution because the evidence adduced at his trial was insufficient to support his conviction.   Petition, p. 5; Pet. Mem., p. 21.   In his brief to the Minnesota Court of Appeals, Perez argued that there was

> insufficient evidence from which a jury could reasonably conclude that [Perez] was either a principal or accomplice to a burglary.
>
> * * *
>
> Even assuming that the jury totally disbelieved [Perez's] testimony, the State's evidence with respect to the burglary was wholly insufficient to hold [Perez] accountable for that crime.

---

1994).   It is evidence of factual innocence coupled with a constitutional violation that triggers the actual innocence exception.   Indeed, a credible claim of actual innocence 'requires [a] Perez to support his allegation of constitutional error with new reliable evidence…' [Schlup, 513 U.S. at 324].   Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340…(1992), trustworthy eyewitness accounts, see  Schlup, 513 U.S. [at 324]…and exculpatory scientific evidence.

85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996).

Resp. Appx. p. A-26.  Perez did not present this issue to the Minnesota Supreme Court in his petition for further review.[10] Id., p. A-93-102.

Further, Perez never stated in his appeal to the Minnesota Court of Appeals that his conviction violated his right to due process under the United States Constitution. Resp. Appx., pp. A-2, A-26-28 (portion of Perez's appellate brief addressing sufficiency of the evidence), A-81-83 (portion of Perez' appellate reply brief addressing sufficiency of the evidence).  A claim for a violation of Perez's federal constitutional rights on this issue cannot be read into what Perez presented to the Court of Appeals.  Nor did the Minnesota Court of Appeals address or make any constitutional rulings in its opinion on this issue.  See Perez, 2009 WL 1918634 at *3 (discussion of sufficiency of the evidence claim).

Similarly, as to Ground Four of his habeas petition, Perez never identified any issues of federal law raised by the trial court's decision to deny him an evidentiary hearing on his motion for post-conviction relief in his brief to the Minnesota Court of Appeals or in his petition for further review to the Minnesota Supreme Court.  See Resp. Appx. pp. A-31-33 (portion of Perez's appellate brief addressing the post-conviction court's denial of relief without an evidentiary hearing); pp. A-93-102 (Petition for Further Review).  The Minnesota Court of Appeals made no constitutional rulings on this issue. As with his claim for regarding the sufficiency of the evidence, this Court cannot read

---

[10]     Perez's only reference in his Petition for Further Review to the Minnesota Supreme Court regarding the sufficiency of the evidence was made in the context of his argument regarding the State's allegedly conflicting theories of perpetrators and events: See Resp. Appx., p. A-100 ("Given the State's conflicting version in Syring's trial that Syring was not in Alba-Reyes' residence, there is clearly insufficient evidence to connect Perez to a burglary.")

violations of federal constitutional rights into what Perez presented to the Minnesota Court of Appeals.

Having determined that Perez failed to fairly present Grounds Two and Four to the state court, the Court must now address whether Minnesota state law would prevent him from raising these claims in a state court. See McCall, 114 F.3d at 757 (citation omitted). Stated otherwise, generally when a petition contains unexhausted claims, the Court would recommend that the petition be dismissed without prejudice, so that Perez could return to the state courts and attempt to pursue his currently unexhausted claims through the filing of a motion for post-conviction relief with the trial court. See Minn. Stat. § 590.01 (allowing a convicted individual who claims that the conviction obtained or the sentence or other disposition made against him violated the his rights under the Constitution or laws of the United States to commence a proceeding to secure relief by filing a petition to vacate and set aside the judgment and to discharge the petitioner or to resentence the petitioner or grant a new trial or correct the sentence). However, under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for post-conviction relief." State v. Knaffla, 243 N.W.2d 737, 741 (1976). This rule, called the Knaffla rule, is well settled state law. Powers v. State, 731 N.W.2d 499, 501 (Minn. 2007). Claims which are "known" include those available after trial and which could have been raised on direct appeal. See Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006) (citation omitted).

There are two exceptions to the Knaffla rule. First, if a claim is known to the petitioner at the time of an appeal but is not raised, it will not be barred if its novelty was

so great that its legal basis was not reasonably available when the direct appeal was taken; and second, even if the claim's legal basis was sufficiently available, it will not be barred when fairness so requires the review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal.  See Townsend, 723 N.W.2d at 18 (citations omitted); see also Powers v. State, 731 N.W.2d 499, 502 (Minn. 2007) ("There are two exceptions to the Knaffla rule: (1) if a novel legal issue is presented, or (2) if the interests of justice require review.").

Based on the Knaffla rule, this Court concludes that if Perez returned to the district court and filed a post-conviction petition to raise a federal due process violation in connection with Grounds Two (insufficient evidence of guilt) and Four (trial court's failure to grant an evidentiary hearing on his petition for post-conviction relief) of his habeas petition, under Minnesota law he would be barred from pursuing such claims because these two issues were already raised on direct appeal, the federal constitutional challenge was available to him at that time, and there is no evidence to suggest that these federal claims were unknown or so novel that could not have presented in the direct appeal.  See McCall, 114 F.3d at 757-58 (based on the Knaffla rule, court concluded that petitioner is precluded from returning to state court to raise a federal constitutional claim after a direct appeal where there is no evidence his federal claims were unknown or were so novel that their legal basis was unknown at the time of direct appeal).  On this basis, the Court finds that Perez has procedurally defaulted on his claims regarding sufficiency of the evidence and the district court's failure to hold a post-conviction evidentiary hearing.

Additionally, Perez has not provided the Court with any evidence of cause or prejudice for his procedural default regarding these claims.   He was provided the opportunity to reply to Respondent's answer to his habeas petition, but he did not do so. See, Order, Feb. 18, 2010 [Docket No. 10].   Therefore, the Court has no information from which it can determined whether there is cause or prejudice that would preclude a finding that Perez procedurally defaulted on these two claims.   In any event, there is no evidence that the factual or legal basis for these claims were not reasonably available to Perez or that someone interfered with his ability to assert the constitutional arguments he made in his petition for habeas corpus relief.   See Coleman, 501 U.S. at 753. Finally, Perez did not provide any new evidence to suggest his innocence to establish that the Court should apply the "fundamental miscarriage of justice" exception in this case. See Groose, 66 F.3d at 999.

For all of these reasons, this Court recommends that Grounds Two and Four be dismissed with prejudice because Perez did not exhaust these claims, they are procedurally barred, and there is no basis to excuse the procedural default.

## B.   Inconsistent Theories of Perpetrators and Events

Perez alleged in Ground One that he was denied his Fourteenth Amendment right to due process when "the prosecutor advanced inconsistent theories of perpetrators and events in the codefendant's separate trials [which] violated [Perez's] right to due process and fundamental fairness and compromised the integrity of the judicial system."   Petition, p. 5.   Perez refers this conduct as violating the doctrine of "judicial estoppel."   See Pet. Mem., p. 16.   Perez raised the issue of a violation of his right to due process both to the Minnesota Court of Appeals and in his petition for

further review to the Minnesota Supreme Court. See Perez, 2009 WL 1918634 at *1; Resp. Appx. pp. A-98-99. The claim has been properly exhausted.

There is no express statement from the Supreme Court that inconsistent prosecutorial theories used in the cases of two different defendants violate the Due Process clause. In 2005, the United States Supreme Court decided Bradshaw v. Stumpf, 545 U.S. 175 (2005). In that case, the Sixth Circuit held that a prosecutor's use of inconsistent, irreconcilable theories (which involved two separately tried defendants, where the prosecution claimed that in each case the defendant was the shooter in a murder) violated due process. See Stumpf v. Mitchell, 367 F.3d 594 (6th Cir. 2004). On appeal, the Supreme Court found that the use of inconsistent theories did not void the habeas petitioner's guilty plea, as state law did not distinguish between aiding and abetting and being a principle actor and where the change in theories did not arise until after the petitioner's guilty plea. Bradshaw, 545 U.S. at 187-88. However, the Court allowed that:

> The prosecutor's use of allegedly inconsistent theories may have a more direct effect on Stumpf's sentence, however, for it is at least arguable that the sentencing panel's conclusion about Stumpf's principal role in the offense was material to its sentencing determination. The opinion below leaves some ambiguity as to the overlap between how the lower court resolved Stumpf's due process challenge to his conviction and how it resolved Stumpf's challenge to his sentence.
>
> ***
>
> In these circumstances, it would be premature for this Court to resolve the merits of Stumpf's sentencing claim, and we therefore express no opinion on whether the prosecutor's actions amounted to a due process violation, or whether any such violation would have been prejudicial.
>
> ***

> Accordingly, we vacate the portion of the judgment below relating to Stumpf's prosecutorial inconsistency claim, and we remand the case for further proceedings.

Id.

In his concurring opinion, Justice Thomas stated that the Supreme Court "has never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories." Id., p. 189 (Thomas, J. concurring). See also Fotopoulos v. Secretary, Dept. of Corrections, 516 F.3d 1229, 1235 (11th Cir. 2008) ("the Bradshaw Court did not hold that the use of inconsistent theories in the prosecution of two defendants violates the right to due process."). Nonetheless, some appellate courts that have considered the issue before Bradshaw, including the Eighth Circuit, have treated the advancement of inconsistent prosecutorial theories to be a due process violation. See United States v. Presbitero, 569 F.3d 691, 702 (7th Cir. 2009) (collecting cases).

In a case decided before Bradshaw, the Eighth Circuit analyzed the use of inconsistent theories to obtain convictions of different defendants for the same crime. See Smith v. Groose, 205 F.3d 1045, 1049 (8th Cir. 2000). In Smith, Smith was convicted of first degree felony murder. On appeal from the district court's dismissal of his habeas petition, he argued that he was denied his constitutional right to due process because his conviction was obtained through the State's use of factually contradictory theories to secure the convictions of both Smith and another defendant, Cunningham, for the murders of an elderly Kansas City couple.

The court observed:

> [T]he prosecutor who handled Smith's case also handled Cunningham's and, we note, the cases against all the other defendants. When trying Smith, the State asserted that

30

> Lytle's [another participant in the crime] December 2, 1983, statement was the truth, that Lytle had made up his in-court testimony to try to avoid his and his associates' convictions for felony murder, and that Bowman [another participant] had killed the Chamberses after Smith's group entered the house.
>
> ***
>
> Subsequently, when trying Cunningham, the State contended that Lytle's November 30, 1983, statement was the truth, did not introduce the videotaped December 2, 1983, statement, and objected to a line of questioning by defense counsel based on the theory that Lytle was lying about Cunningham's complicity in order to protect his friends.  In short, what the State claimed to be true in Smith's case it rejected in Cunningham's case, and vice versa.  The State points out in its brief that "[t]here is no question that the victims were killed during the burglary either before or after the petitioner began to participate."  This is precisely the point—the State argued in one case, "before," and in another case, "after," in its successful attempt to prove beyond a reasonable doubt that the Chamberses were murdered at two different times.  The state court formulated jury instructions that attempted to account for this difference in timing and the conclusions which flow from it . . . . This before/after distinction is the heart of the prosecutorial inconsistency that allowed the State to convict as many defendants as possible in a series of cases in which the question of timing was crucial.

Id. at 1050-1051.

The Eighth Circuit analyzed the constitutional impact of this conduct within the framework of the government's fundamental interest in criminal prosecution, stating "not that it shall win a case, but that justice shall be done."  Id. at 1049 (quoting Berger v. United States, 295 U.S. 78, 88 (1976)).  "[T]he Due Process Clause requires conduct of a prosecutor that it does not require of other participants in the criminal justice system, such as the duty to 'disclose evidence favorable to the accused that, if suppressed

would deprive defendant of a fair trial . . . ."  Id. (quoting United States v. Bagley,

473 U.S. 667, 675 (1985)) (ellipses in original).

The Eighth Circuit remanded the matter to the district court with directions to

issue the writ of habeas corpus.   However, the court cautioned that the situation

presented in Smith was "unusual," noting:

> we doubt that such claims as his will often occur.  To violate
> due process, an inconsistency must exist at the core of the
> prosecutor's cases against defendants for the same crime.
> In the present case, the State's zeal to obtain multiple
> murder convictions on diametrically opposed testimony
> renders Smith's convictions infirm.

Id. at 1052 (emphasis added).

Even assuming that the Supreme Court were some day to agree with the Eighth

Circuit that use of inconsistent theories by a prosecutor to obtain convictions of different

defendants for the same crime could amount to a violation of due process, the facts in

this case do not support Perez's contention that the state advanced "irreconcilable" or

"diametrically opposed" theories and events of the type contemplated by Smith, and

which could amount to a due process violation.  First, despite Perez's assertion that "the

facts in each trial were the same," (Pet. Mem., p. 17), as the Minnesota Court of

Appeals explained, not only was the evidence not identical in both cases, but it critically,

it was not inconsistent.  In Syring's trial, the prosecution only presented evidence that

Syring was the person Abla-Reyes saw and chased in the alley; it did not offer evidence

that Syring was in the house.  Perez, 2009 WL 1918634 at *2. In addition, Syring had a

separate alibi witness.   Id.   In Perez's trial, Abla-Reyes testified that he did not

recognize the person in the house, and while he indicated that he chased Syring "from"

the house, that testimony could "have meant that, when he chased Syring down the alley, he was chasing him away from the vicinity of his house." Id.

Second, Perez's reliance on the state's closing argument as evidence that the state took inconsistent positions in the two trials, is misplaced.[11]  See Petition, Appx., p. A-12-16 (transcript of the State's closing argument at trial).  As a preliminary matter, statements made by counsel during closing argument are not evidence.  See United States v. Rusan, 460 F.3d 989, 993 (8th Cir. 2006) (citing United States v. Lowrimore, 923 F.2d 590, 593 (8th Cir.)).  Therefore, to the extent that Perez's claim of inconsistent theories of the case rests on comments made by the prosecutor in closing arguments, this claim is not legally viable.

But even if the Court took a broad view of the closing arguments in both trials, an examination of the arguments still does not show that the State took contradictory positions of the type contemplated by Smith.  See Smith, 205 F.3d at 1051 ("We do not hold that prosecutors must present precisely the same evidence and theories in trials for different defendants).

In the closing argument at Perez's trial, the State argued that "someone was just slipping out of the house.  Abla-Reyes gave chase and caught up to Aaron Syring in the alley."  Petition, Appx., p. A-12.  Later, the prosecutor stated that Aaron Syring had "just robbed" Abla-Reyes house.  Id., p. A-16.  In Syring's trial, the prosecutor "advised the

_____

[11]  Perez stated:  "The Minnesota Court of Appeal's finding that the state did not "present clearly inconsistent positions in separate trials is clearly shown to be wrong upon review of the prosecutor's closing argument at A-12 thru A-16 of [Perez's exhibits.]"  Pet. Mem., p. 20.

jury that Syring was part of a group of men who worked together to commit burglaries" and that Syring was the "look out."  See Resp. Appx., p. A-19.

Like the Minnesota Court of Appeals, this Court finds that the record does not support the argument that the prosecution in Perez's trial was attempting by his comments to establish who was in the house.   Perez, 2009 WL 1918634 at *2. Furthermore, this Court does not find that the scenarios presented by the prosecution in the closing arguments were "fundamentally inconsistent" or at the core of the State's case against either defendant.   Perez was convicted of aiding and abetting burglary. When the prosecutor stated in Perez's trial that Syring had "just robbed" Abla-Reyes house, he could have been referring to the fact that Syring was part of a group and that Syring was involved, just as he argued at Syring's trial.   As the state appellate court observed, "[c]onviction of appellant for aiding and abetting first-degree burglary did not require that the prosecution prove who was in the house committing the burglary or base a conviction solely on the theory that Syring was the burglar."  Id.

The Court finds no fundamental inconsistencies in the state's theories in the two cases sufficient to warrant the highly unusual relief of a writ of habeas corpus. Accordingly, where the lower court proceedings did not result in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, and the State court proceedings did not result in a decision that was based on an unreasonable determination of facts in light of the evidence presented, Perez's petition regarding this claim should be dismissed.

**C.**    **Ineffective Assistance of Counsel**

In his Third Ground for relief, Perez claims that he was denied his right to effective assistance of counsel under the Sixth Amendment because his attorney failed to investigate and call defense witnesses. Petition, p. 6. This issue was presented to the Minnesota Court of Appeals and to the Minnesota Supreme Court in Perez's petition for further review.[12] See Perez, 2009 WL 1918634 at * 4-5; Resp. Appx., pp. A-100-A101. This issue was fairly presented to the state courts. See Baldwin, 541 U.S. at 29.

The Minnesota Court of Appeals rejected the ineffective assistance of counsel claim, stating:

> Appellant's trial counsel called two witnesses who confirmed appellant's testimony about his activities earlier that evening.[13] Appellant's attorney had to work within this factual setting. Appellant claims additional witnesses[14] should have been called about his whereabouts earlier in the evening. Having already admitted to the physical confrontation and based on the timeline of events, appellant's attempt to contest being in the area at the time of the burglary appears to be a very marginal defense strategy. Abla-Reyes's

---

[12]    Perez's argument regarding ineffective assistance of counsel to the Minnesota Court of Appeals specifically cited the Sixth Amendment and Strickland v. Washington, 466 U.S. 668, 685 (1984). See Resp. Appx., pp. A-28-31. Although the constitutional dimensions of this claim are not overtly referenced in Perez's Petition for Review to the Minnesota Supreme Court, this Court will treat the claim as having been fairly presented to the state courts, as the Court of Appeals' decision was attached to the Petition for further review. See Resp. Appx., p. A-93 (Petition for Further Review).

[13]    Based on the examination of the record, the Court believes that the Court of Appeals was referencing the testimony of Perez's friend, Sherry Green, her son Marcus Green, or Perez's girlfriend, Jamie Reichert. Resp. Appx., pp. A-14, A-18.

[14]    According to the Ellis Affidavit, these witnesses were a St. Paul Police officer who observed Perez flee Schweitz's bar, and the records custodian for the St. Paul Police Department who would have established that a telephone call from Green's address to the police took place about the time she heard a knock on her door and saw men in a van in front of her house. Resp. Appx., pp. A-42-43.

> testimony connected the crimes in time and space, and the stolen purse ties appellant not only to the assault, but also to the burglary. Under the facts alleged in the postconviction petition and even the motion for reconsideration, we conclude that the decision of appellant's attorney to not seek out or call additional alibi witnesses did not fall below an objective standard of reasonableness. The affidavit of appellant's appellate attorney did not provide an adequate basis to require a hearing on ineffective assistance of trial counsel on these matters. We conclude that the district court did not abuse its discretion in determining that a hearing on such matters would have been fruitless.

Perez, 2009 WL 1918634 at *5.

In support of Ground Three, Perez made virtually the same arguments he presented to the Court of Appeals: his defense counsel should have pursued the testimony from the St. Paul police officer and St. Paul Police Department records custodian to counter the prosecutor's arguments that Perez had fabricated his story that he was not with Syring the night of the assault on Abla-Reyes, and to bolster Perez's credibility.   Compare Resp. Appx., pp. A-28-31 (appellant's brief to court of appeals) with Pet. Mem., pp. 26-29.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  To state a claim for ineffective assistance of counsel, a habeas petitioner "must demonstrate that: (1) 'counsel's representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'"  Miller v. Dormire, 310 F.3d 600, 602 (8th Cir. 2002) (quoting Strickland, 466 U.S. at 687-88).  "To satisfy the second part of the Strickland test, the petitioner must prove that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different.'" <u>Garrett v. Dormire</u>, 237 F.3d 946, 950 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694); <u>Miller</u>, 310 F.3d at 602 (same).

In ineffective assistance of counsel claims, there is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy. <u>Strickland</u>, 466 U.S. at 689; <u>Collins v. Dormire</u>, 240 F.3d 724, 727 (8th Cir. 2001) (in determining whether counsel's performance was deficient, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .") (quoting <u>Strickland</u>, 466 U.S. at 689).

Here, defense counsel's alleged failures relate to investigation and testimony that would have allegedly corroborated Perez's testimony regarding his whereabouts and events before his encounter with Abla-Reyes, such as running away from police at Schweitz's bar and being dropped off at Sherry Green's house by unknown persons. Perez's post-conviction and appellate counsel believed that "with the benefit of the evidence corroborating Perez's whereabouts prior to his bout with Abla-Reyes, Perez's testimony would have carried far more weight and credibility given his self-defense claim." <u>See</u> Resp. Appx., p. A-101 (Petition for Further Review).

Perez's testimony indicated that Sherry Green's house, his father's house and Abla-Reyes' house were all in the same area. He claims he was dropped off at Sherry Green's house and was running towards his father's house when he encountered Abla-Reyes (<u>see</u> Pet. Mem., pp. 8-9), and he also testified that he "kneed" Abla-Reyes in the face. <u>Id.</u>, p. 9.

Whether the evidence that Perez now claims would have corroborated his story regarding his whereabouts earlier in the evening and would have given more weight or

credibility to his testimony in the jury's eyes is purely speculative and fails to meet the second prong of the Strickland test, that "but for" counsel's errors, the result of the proceeding would have been different. A conclusory allegation that counsel's failure to utilize available evidence is insufficient to demonstrate that counsel was ineffective or that Perez was prejudiced. See United States v. Delgado, 162 F.3d 981, 983 (8th Cir. 1998) (concluding that naked assertions that an attorney failed to call exculpating witnesses are insufficient to show counsel was ineffective or that defendant was prejudiced).

> Counsel's strategic decisions "made after a thorough investigation of law and facts ... are virtually unchallengeable," Strickland, 466 U.S. at 690, 104 S.Ct. at 2066, even if that strategic decision proves unwise. See Walker v. Lockhart, 852 F.2d 379, 381 (8th Cir.1988), cert. denied, 489 U.S. 1088, 109 S.Ct. 1551, 103 L.Ed.2d 854 (1989). The fact that hindsight later reveals defects in counsel's strategy does not render that strategy unreasonable. Couch v. Trickey, 892 F.2d 1338, 1343 (8th Cir.1989). Nor is counsel ineffective under constitutional standards "merely because other lawyers may have used another strategy." Walker, 852 F.2d at 383.

Wing v. Sargent, 940 F.2d 1189, 1191-92 (8th Cir.1991).

The evidence Perez cites does not exclude the possibility that events subsequent to those earlier events unfolded as the State alleged. Moreover, the alleged evidence is not alibi evidence in the sense that it would have exonerated Perez or placed him elsewhere at the time of the crime.

In short, faced with all of the evidence adduced at the trial to support Perez's conviction, (see Perez, 2009 WL 19198634 at *3), this Court cannot find that the testimony of the St. Paul police officer or records custodian regarding Green's call to police would have lead the jury to reach a different conclusion. In light of these facts,

and applying the objective standard of reasonableness and the strong presumption that defense counsel's decisions were "sound trial strategy," as described by <u>Strickland</u>, the Court concludes that Perez's Sixth Amendment right to effective assistance of counsel was not violated.

In summary, the Court finds that the lower court proceedings did not result in a decision that was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the United States Supreme Court, nor did the State court proceedings result in a decision that was based on an unreasonable determination of facts in light of the evidence presented.

## IV.    CONCLUSION

This Court has determined that Perez cannot be granted a writ of habeas corpus for any of the claims raised in his Petition.  He has procedurally defaulted on his claims regarding sufficiency of the evidence to sustain his conviction and the state court's denial of a post-conviction evidentiary hearing.  He has not shown legally sufficient cause and prejudice to excuse his procedural default, and he has not presented any clear and convincing evidence to prove that he is actually innocent of the crimes for which he was convicted.  Perez's procedural default on these claims is unexcused.

Additionally, Perez has failed to show that the state court's decisions regarding the presentation of allegedly conflicting theories of perpetrators and events and his claim of ineffective assistance of counsel, were contrary to, or involved an unreasonable application of federal law as determined by the Supreme Court, or were an unreasonable determination of the facts in light of the evidence presented to the state

court.   For all of these reasons, Perez's habeas petition should be dismissed with prejudice.

## V.      RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Docket No. 1] be DENIED.


Dated:        February 15, 2012


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


## NOTICE

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 29, 2012** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.